McCALEB, Justice.
 

 This controversy arises out of an oral contract of purchase and sale of lumber. Plaintiff, however, ignoring the contract, instituted the action to recover $2211.44 from the defendant, a commercial co-partnership,
 
 [1]
 
 alleging that during the year 1946 he “advanced and loaned” $6500 to defendant and that it repaid $4388.56, leaving a balance due in the amount sued for.
 

 Defendant answered and denied any indebtedness. It set forth that, on August 27th 1946, it entered into an oral agreement with plaintiff to sell him all the lumber cut and produced by it at its mill for the price of $40 per thousand feet and that, as said lumber was cut and stacked at its mill site in accordance with specifications of plaintiff’s agent, it was to be deemed plaintiff’s property, to be removed by him at his pleasure. It further averred that, in conformity with this understanding, it cut and stacked at the first mill site used in the work approximately 110,000 feet of lumber; that, thereafter, it changed its operations to another mill site where approximately 60,000 feet of lumber was stacked, thus making a total of 170,000 feet of lumber; that, as this lumber was cut and stacked in accordance with 'the
 
 *1019
 
 specifications of plaintiff’s agent, payments were made by pláintiff each week during the months of September, October, November and December 1946 and that the total of these payments amounted to $6600, which represented the purchase price for the lumber cut, stacked and delivered at the two mill sites.
 

 After a trial in the lower court, there was judgment in plaintiff’s favor for the sum of $2066.52. Defendant has appealed. Plaintiff has answered, praying that the judgment be increased to the sum sued for and, alleging that the appeal is frivolous, seeks 10% additional on principal and interest as damages.
 

 An examination of the record makes manifest that the only matters presented for decision are questions of fact. It is not disputed that the parties entered into an oral agreement during August of 1946, whereby plaintiff was to purchase lumber produced at defendant’s mill and that he did purchase a large quantity of lumber, making disbursements totalling $6600, which were based on estimates furnished him by his inspector and agent, one W. G. Sanderson, who was stationed at defendant’s mill. However, disagreement occurs as to whether the $6600 was given in payment for the purchase of the mill’s output or whether it constituted mere cash advances on account of lumber to be purchased.
 

 Defendant claims, as alleged in its answer, that plaintiff agreed to purchase its entire output to be cut and stacked at its mill sites for plaintiff’s use and account; that payments were made to it each week in accordance with estimates of Sanderson as to the amount of lumber stacked for plaintiff’s account and that at least 165,000 feet of lumber were cut and stacked at the two mill sites for which plaintiff paid a total sum of $6600 in accordance with his agreement ($40 per thousand feet).
 

 Francis H. Taylor, one of the co-partners who made the agreement on behalf of defendant, testifies to the foregoing. His testimony is corroborated in large measure by his partner, James R. Barron, and is further supported by other facts and circumstances to which we shall hereafter refer.
 

 A reading of plaintiff’s evidence and that of his inspector, W. G. Sanderson, does not clarify the exact nature of his contention. Plaintiff stated that he made an agreement to purchase lumber from defendant; that the money was advanced weekly upon estimates furnished him by Sanderson but he maintains that the money disbursed on Sanderson’s estimates was not in payment of the purchase price of the lumber. His version of the agreement, as we understand it, is that he was to pay only for the part' of the lumber that he resold to his customers and, on this basis, he offered in evidence various and sundry sales slips showing that he disposed of 113,337 feet of lumber for which he gives defendant a credit of $4388.56, leaving the balance due of $2211.44, sued for.
 

 
 *1021
 
 The testimony of Sanderson supports plaintiff’s position that he was not buying the output of defendant’s mill but only such lumber as he (Sanderson) would approve after it had been selected from the stacks at the mill site. When questioned about the estimates upon which the payments to defendants were made, Sanderson answered that the money was merely advanced and that the agreement was that the difference would be adjusted when plaintiff removed the lumber from the stacks.
 

 Thus, it is seen that there is a irreconcilable conflict between the evidence of plaintiff and Sanderson and that of Taylor and Barron. If we give equal credence to all of these witnesses, it is evident that plaintiff’s suit must fail as he is seeking recovery of overpayments made under the contract and, consequently, the burden was on him to establish that fact by a preponderance of evidence. And he could not escape this obligation by the expedient of disregarding the contract and making it appear that he had “loaned” defendant $6600.
 
 [2]
 

 But, apart from the burden of proof, we think that there are other facts and circumstances appearing herein which make it plain that the judgment in plaintiff’s favor is manifestly erroneous. To begin with, we find the evidence of Taylor, who made the agreement for defendant, to be clear and direct in all particulars whereas plaintiff’s testimony is uncertain and equivocal. Then, too, it is shown by one of the defense witnesses, James Koscinsky, that he contacted Taylor in January 1947 for the purpose of buying some lumber; that Taylor informed him that he would have to see Sanderson; that, in an interview with the latter, he was told that all the stacked lumber belonged to plaintiff because defendant was cutting it for him and that he could buy the lumber on the stack at $65 per thousand feet. Sanderson does not attempt to contradict the statement of Koscinsky in his rebuttal testimony.
 

 When we consider the foregoing and other circumstances, we believe that it is reasonable to conclude that the weekly monies disbursed by plaintiff to defendant, based on the estimates of his inspector of the lumber cut and stacked, were payments for the purchase of the lumber at $40 per thousand feet and that, since the evidence shows that defendants cut and stacked at least 165,000 feet of such lumber for plaintiff’s account, defendant has not been overpaid.
 

 The judgment appealed from is reversed and plaintiff’s suit is dismissed at his costs.
 

 O’NIELL, C. J., does no.t take part.
 

 [1]
 

 Plaintiff joined James R. Barron and Francis H. Taylor, the partners, as co-defendants and prayed for judgment against the partnership and the co-partners in solido,
 

 [2]
 

 The district judge erroneously concluded that, since defendant admitted receiving $6600, it carried the burden of establishing that it not only cut and made available 165,000 feet of lumber but that this lumber, when stacked, was at plaintiff’s risk.